151 F.3d 1032
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Thomas A. GLAB, Plaintiff-Appellant,
v.
CALIFORNIA STATE BOARD OF EQUALIZATION, Defendant-Appellee.
 No. 97-3965.
 United States Court of Appeals, Seventh Circuit.
 Argued July 7, 1998.
Decided July 28, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 96 CV 3917 John F. Grady, Judge.
 Before Hon. WILLIAM J. BAUER, Hon. JESSE E. ESCHBACH, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Thomas A. Glab brought this action against the California State Board of Equalization alleging that it discriminated against him when it failed to promote him because of his gender and age in violation of Title VII, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. The district court granted summary judgment for the Board. Glab appeals. We affirm.
 
 
 2
 Glab began working for the Board in its Chicago office in 1973 as a tax auditor and subsequently received several promotions over the next two decades. In 1993 Glab sought promotion to the position of area administrator in the Chicago office. The Board determines which employees are eligible candidates for available positions based on their scores on a comprehensive examination that includes a written pass/fail test and an oral promotional readiness interview. When a position becomes available the Board asks those employees with an acceptable examination score whether they are interested in the available position. The three individuals with the highest scores among those interested in the position are then considered eligible candidates for the promotion. The three candidates for the promotion to area administrator were Glab, Terence Dudek, and Barbara Bolda. Glab and Dudek were both employees at the Board's Chicago office, while Bolda was employed at the Board's New York office. At the time the employees were being considered for the position, Glab had 20 years of experience, of which 7 were as a supervisor. Dudek had 18 years of experience, of which 10 were as a supervisor, and Bolda had 10 years of experience, of which 2 were as a supervisor. Bruce Henline, the district administrator, was responsible for recommending a candidate to the Board for the promotion. After interviewing all three candidates, Henline recommended Bolda for the position, and the Board promoted her.
 
 
 3
 Glab filed suit, alleging that the Board discriminated against him on the basis of his gender and age in passing him over in favor of Bolda. At the time of the promotion Glab was 44 years old, while Bolda was 31. The district court concluded that Glab made out a prima facie case and that the Board asserted a legitimate, nondiscriminatory reason for promoting Bolda--the Board believed she was the most qualified candidate. Glab argued that the Board's reason was a pretext for discrimination because: (1) the Board was predisposed to hire a female due to a recent sexual harassment suit and inquiries as to why there were no female supervisors in the Chicago office; (2) Henline had stated that part of the reason Bolda was selected was because she had "enthusiasm" and "higher energy," which Glab asserts are euphemisms for youth; (3) Bolda was the least qualified of the three eligible candidates; (4) Bolda's promotion deviated from established procedures to promote eligible candidates from within the office where the available position is located; and (5) Henline made contradictory statements regarding the promotion that sufficiently called into question whether he honestly believed Bolda was more qualified. The district court granted summary judgment for the Board, finding that none of Glab's assertions raised a genuine issue of material fact with respect to pretext.
 
 
 4
 On appeal, Glab argues that the district court erred in granting summary judgment for the Board because the court failed to consider direct evidence of sex discrimination. He also asserts that the Board's proffered reason for promoting Bolda was a pretext for sex and age discrimination and that the court misapplied the standard for analyzing summary judgment issues.
 
 
 5
 We review de novo a district court's grant of summary judgment. Talanda v. KFC Nat'l Management Co., 140 F.3d 1090, 1095 (7th Cir.1998). "Summary judgment is appropriate when the record, viewed in a light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Vector-Springfield Properties, Ltd. v. Central Ill. Light Co., 108 F.3d 806, 809 (7th Cir.1997) (citing Fed.R.Civ.P. 56(c)). In order to avoid summary judgment a party must put forth sufficient evidence to allow a jury to render a verdict in his favor. Fisher v. Wayne Dalton Corp. 139 F.3d 1137, 1140 (7th Cir.1998). "A plaintiff can avert summary judgment for the defendant in an employment discrimination case either by putting in enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue or by establishing a prima facie case under the McDonnell Douglas formula." Sheehan v. Daily Racing Form, Inc., 104 F.3d 940, 940 (7th Cir.) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)), cert. denied, 117 S.Ct. 2480 (1997); see Geier v. Medtronic, Inc., 99 F.3d 238, 241 (7th Cir.1996). Glab attempts to establish evidence of sex discrimination under both methods and age discrimination under the McDonnell Douglas formula.
 
 
 6
 Glab first argues that he had direct evidence that he was discriminated against on the basis of gender. Glab argues that a statement made by Henline indicates that Bolda was selected for the promotion over the other candidates solely because she was a woman. In a memorandum written on May 31, 1994, Henline said:
 
 
 7
 After I made my decision as to who to recommend, I reflected on the impact the appointment would have, and the perceived lack of support for advancement of women in the Chicago office. I felt that the appointment of Ms. Bolda would encourage other excellent women employees to seek advancement.
 
 
 8
 This memorandum was written in response to Glab filing his complaint alleging sex and age discrimination. Although the memorandum was written almost a year after Bolda was selected, Glab points out that the statement does not indicate how long after Bolda was selected Henline "reflected" on the fact that her appointment would encourage other female employees to seek promotions. Glab asserts that Henline's statement constitutes direct evidence that gender played an impermissible role in the selection of Bolda.
 
 
 9
 As a preliminary matter, Henline's statement is better characterized as circumstantial evidence, as it is not an outright admission that the Board discriminated against Glab. Geier, 99 F.3d at 241; Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir.1994). In order to get over the hurdle of summary judgment by showing discriminatory motivation, an employee need not produce the equivalent of guilt by the employer. Troupe, 20 F.3d at 737. "All that is required is evidence from which a rational trier of fact could reasonably infer that the defendant had [committed the adverse employment action against] the plaintiff because the latter was a member of a protected class...." Id. Henline's statement, we think, falls short of meeting this standard. The statement does not indicate that Bolda's sex was a factor considered in making the promotion determination but shows instead that Henline considered as an afterthought the fact that he believed a woman supervisor would encourage other women to seek promotions.
 
 
 10
 As additional evidence of direct discrimination, Glab asserts that we must give "full force and effect" to a decision of a different district judge on Dudek's claim of discrimination based on the same facts. Dudek v. California State Bd., No. 96 C 3918 (N.D.Ill. Nov. 19, 1997) (unpublished order).[1] Almost a month after the district judge granted summary judgment for the Board on Glab's claim, another district judge, in Dudek's case, denied summary judgment for the Board on the sex discrimination claim, finding that Dudek raised a genuine issue of material fact that the reasons given for selecting Bolda over him were a pretext for sex discrimination. The parties dispute whether Glab is attempting to rely on the doctrine of collateral estoppel (or what the Board refers to as "collateral estoppel in reverse"), although both parties correctly agree that collateral estoppel is inapplicable in this case because Glab's case was decided prior to Dudek's. See Chicago Truck Drivers, Helpers and Warehouse Union (Independent) Pension Fund v. Century Motor Freight, Inc., 125 F.3d 526, 530 (7th Cir.1997). Further, district court decisions are not authoritative in this court, Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership, 34 F.3d 410, 413 (7th Cir.1994), and, of course, our review is de novo. Therefore, we conclude that Glab has failed to raise a genuine issue of material fact that there is direct or circumstantial evidence of discriminatory motivation.
 
 
 11
 The McDonnell Douglas framework consists of a three-part inquiry. The claimant must first establish by a preponderance of the evidence that a prima facie case of unlawful discrimination exists. If a claimant satisfies the elements of a prima facie claim, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Once the defendant meets this burden the claimant must then prove by a preponderance of the evidence that the reasons offered by the defendant were a pretext for discrimination. Fisher, 139 F.3d at 1141; Bahl v. Royal Indem. Co., 115 F.3d 1283, 1290 (7th Cir.1997).
 
 
 12
 The elements of a prima facie case in a gender and age discrimination failure to promote case are that the employee: (1) is in the protected class of being a male and at least 40 years old; (2) applied for a position he was qualified for; (3) did not receive the promotion; and (4) that a similarly situated, substantially younger, female employee received the promotion. Brill v. Lante Corp. 119 F.3d 1266, 1270 (7th Cir.1997); see Fisher, 139 F.3d at 1141 (in general, "substantially younger" requires at least a 10-year age difference). Glab satisfies all of these requirements.
 
 
 13
 The Board stated that the legitimate, nondiscriminatory reason that it chose Bolda over Glab was because she was the most qualified. Henline listed several reasons why he believed Bolda was more qualified and would be more effective as the area administrator than the other two eligible candidates. In particular, Henline stated that Bolda gave superior responses to two important interview questions. At the interview, Bolda stated that she believed the area administrator should work five days a week, while Glab responded that if he received the promotion he would work five days at first, but might switch back to his current alternate work schedule of working four 10-hour days. Henline believed that an area administrator must be available on a daily basis and therefore Bolda's answer, in his view, was better. Henline also preferred Bolda's response to his inquiry on how each candidate would implement an unpopular directive from the district administrator. Bolda stressed that she would not let her staff know if she disliked the directive and would call a staff meeting to explain the directive and instruct them on how to implement it. Further, Bolda gave an example of her successful use of this approach in the New York office. Glab responded to the question by stating that he would inform his staff of the directive through a memo and would inform the district administrator if he strongly disagreed with the directive. Henline stated that Bolda's statements were what he considered correct, concise, complete, and to the point, while Glab's were less clear and skirted the issues.
 
 
 14
 Henline was also more impressed with Bolda's reputation and found that she had a better track record at getting others to do their best. Additionally, prior to being selected for the promotion Bolda was a supervising tax auditor II whereas Glab held the lower-ranked position of supervising tax auditor I. Lastly, Henline also found that Bolda had "more enthusiasm" and "higher energy" than the other candidates.
 
 
 15
 Glab argues that the Board's reasons for promoting Bolda were a pretext for sex discrimination because: (1) he was more qualified than Bolda because he had more years of experience; (2) there was suspicious timing between Bolda's promotion and concern over lack of women supervisors and a sexual harassment suit; (3) Henline stated that he hired Bolda to encourage other women to seek advancement; and (4) the Board deviated from standard procedures in selecting someone with less experience from an outside office. Glab also asserts that the Board's reasons were a pretext for age discrimination because Henline's described Bolda as having "more enthusiasm" and "higher energy," which are mere euphemisms for youth.
 
 
 16
 Although Glab worked for the Board for a longer period than Bolda, Henline considered Bolda to be more qualified for the position for numerous reasons. Glab fails to present any evidence that he was as qualified as Bolda, but instead clings to his belief that he should have received the promotion solely because he had worked for and been a supervisor for the Board for a longer period of time. "It is important to remember that, when we consider whether an employer's justification for dismissing its employee is pretextual, the inquiry is not whether the reason for the [adverse employment action] was a correct business judgment but whether the decisionmakers honestly acted on that reason." Bahl, 115 F.3d at 1291. The fact that Glab had worked for the company longer, without anything else, does not raise an issue that the Board's promotion of Bolda was a pretext for discrimination. Years of service is not necessarily determinative of an individual's qualification for a promotion, particularly in this case where the Board concluded that Bolda gave superior responses at the interview and had a better reputation. See Fisher, 139 F.3d at 1141-42 (holding that discrimination did not occur where an employee with more seniority was passed over for a position because the less-senior employee had superior qualifications for the position). Further, Glab stated that he was unaware of any instances where an employee had been promoted from supervising tax auditor I to area administrator (also known as supervising tax auditor III) and bypassed supervising tax auditor II. Therefore, Glab has failed to raise a genuine issue of material fact over whether he was more qualified than Bolda.
 
 
 17
 Glab next argues that the Board's reason is pretextual because prior to Bolda's promotion the Board had expressed concern over the lack of female supervisors in the Chicago office and was facing a sexual harassment suit from a female employee. During Henline's deposition he stated that he probably had one or two conversations in 1992 with Dale Blue, the previous Chicago area administrator, in which Henline inquired why competent female auditors in Chicago were not seeking promotions. Additionally, on April 1, 1993, James Speed, chief of field operations and Henline's immediate supervisor, also inquired as to why there were no female supervisors in the Chicago office. As noted by Glab, a sexual harassment suit had been filed prior to Speed's discussion with Chicago supervisors in April. However, Speed stated that the primary purpose of his April discussions was the investigation of allegations of travel expense abuses raised in an anonymous letter. Speed stated that this letter did not raise any allegations of sexual harassment, although the record shows that he did ask supervisors a few general questions about discrimination and sexual harassment.
 
 
 18
 There is no suggestion in the record that the Board's concern over the lack of female supervisors translated into a decision not to select Glab because of his gender. See Pilditch v. Board of Education, 3 F.3d 1113, 1118-19 (7th Cir.1993) (fact that a school council member voiced his general concern over a lack of black role models in the school, without more, did not create an inference that he translated that concern into a specific decision to oppose a white candidate for a school principal position because of his race). Further, Glab admits that he is merely speculating that the Board desired to hire a female as the area administrator in order to prevent future sexual harassment complaints. Conclusory allegations or speculation do not defeat a motion for summary judgment. Fisher, 139 F.3d at 1140; Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 932 (7th Cir.1995).
 
 
 19
 Glab also asserts that Henline directly stated that the reason he promoted Bolda was to encourage other women to seek advancement. As already discussed, Henline did not give this as the reason for selecting Bolda; further, he explicitly stated that he did not consider that his selection would have this effect until after he made his decision. Therefore, the observations of Henline and Speed that there were no women supervisors, and Henline's afterthought about the effect his decision would have on female employees, do not raise a genuine issue that the Board's legitimate reasons were a pretext for discrimination.
 
 
 20
 Glab also asserts that pretext is demonstrated because the decision to promote Bolda, deviated from the established Board guidelines for selecting candidates for a promotion. Glab argues that the Board's guidelines state that number of years of experience are a main factor to be considered in promotion decisions. Glab states that Henline ignored years of experience because Henline stated that all of the candidates had the experience necessary for the area administrator position, specifically with respect to length of time. As his only support for his proposition as to what selection criteria the guidelines set forth, Glab cites to a statement in his complaint: "According to the Board's published guidelines, among the factors that constitute job-related criteria are the applicant's education, experience, personal development, personal traits, and fitness." Although the Board admitted this statement, it does not indicate that experience refers strictly to years of experience, rather than type of experience. Further, the statement is completely consistent with the factors that Henline relied on in determining that Bolda was the most qualified individual of the three candidates. In addition, Glab undermines his position by stating in his 12(N)(3) statement that "Henline was required under the merit system to promote the most qualified candidate using the job related criteria." Finally, in appendix A of his 12(N)(3) statement, Glab highlighted the portion of the selection manual that explains that under the merit system, examinations are to be used to determine who the three eligible candidates are and that the management's choice is restricted to hiring the most qualified of the eligible candidates. Therefore, the Board did not deviate from guideline policy in selecting the individual that Henline determined to be the most qualified.
 
 
 21
 Glab also asserts that the Board deviated from its traditional policy of selecting an eligible candidate from the office where the position is located. To support the existence of this practice, Glab cites only to a statement from Speed that he would probably hire an eligible candidate from the same office if he had the exact same qualifications as the other two candidates and they were from different offices. This statement falls far short of stating that the Board had a policy of automatically selecting the in-house candidate. In fact, the record also contains Henline's response to an interrogatory asking whether the Board had a policy or custom of in-house promotions. In his response, Henline stated that he was unaware of any such practice, and the weight given to such a factor varied depending on the particular decisionmaker. Additionally, Glab admitted that he was not aware of any written policy for in-house preference in promotions and also listed several individuals who received promotions into other offices.[2] Glab has failed to provide any evidence that there is a policy of promoting in-house candidates over candidates from other offices. Further, Henline stated that he did consider the negative effect that hiring Bolda would have because she was from another office, but still considered her the most qualified candidate. Accordingly, Glab has failed to establish a triable pretext issue on deviation from promotion policies and guidelines.
 
 
 22
 Having discussed all of the reasons that Glab believes raise an issue that Bolda's promotion was a pretext for sex discrimination, all that remains is to consider his assertion that the Board's reasons for not promoting him were a pretext for age discrimination. The only evidence that Glab presents of age discrimination is that Henline stated at his deposition that he thought Bolda had "much more enthusiasm" and "higher energy" than the other candidates who seemed less energetic and were just counting on their years of service to obtain the promotion. However, viewing these terms in context indicates that Henline was using them to refer to "a desire to excel and a commitment to really, you know, do the job and not to just put in her 9:00 to 5:00." Additionally, neither of these terms connotates age; both enthusiasm and energy indiscriminately apply to people of all ages. Cf. Hoffman v. MCA, Inc., No. 97-3199, slip op. at 8 (7th Cir. June 5, 1998) (on summary judgment term "fresh legs" interpreted to mean young person). Therefore, Glab has not raised a genuine issue about whether the Board's reasons for selecting Bolda were a pretext for age discrimination.
 
 
 23
 Lastly, the Board argues that Glab's argument that age discrimination occurred is frivolous and asserts that sanctions are appropriate. To support the appropriateness of sanctions, the Board states that Glab admitted that he did not know if age was a factor in the selection process and did not know if Henline knew the ages of the candidates. However, Glab states that Henline may have known the ages of the candidates because he had access to personnel files which might include dates of birth, the resumes that the candidates submitted listing work history and education dates which would facilitate an estimate of an individual's age, and Henline had met with each candidate several times and therefore could have guessed their ages. Accordingly, Glab does present an argument--though it is very thin--on the age discrimination issue, thus making sanctions inappropriate.
 
 
 24
 Glab fails to raise a genuine issue as to whether the Board acted with a discriminatory motive in selecting a female employee over him for a promotion. He also fails to establish a triable issue concerning whether the Board's legitimate, nondiscriminatory reason for hiring Bolda was a pretext for gender or age discrimination. The grant of summary judgment by the district court is AFFIRMED.
 
 
 
 [1]
 We question why the Dudek case and this one were not heard by the same district judge. It seems wasteful to us (and dangerous, too, for inconsistent results can occur) to have two judges decide whether Ms. Bolda got her promotion based on her own merit
 
 
 [2]
 Although now, for the first time in his reply brief (and without any support), he states that candidates from other offices were promoted into Chicago only when there were no qualified in-house candidates